IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| OMID AHMADI | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | **Case No. 22-CV-529-CVE-JFJ** |
| v. | ) | |
| | ) | |
| 1. **CITY OF TULSA;** | ) | |
| 2. **G4S SECURE SOLUTIONS (USA)** | ) | |
| **INC;** | ) | |
| 3. **JOHN DOE ##1-10, UNIDENTIFIED** | ) | |
| **DETENTION OFFICERS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AMENDED COMPLAINT

**COMES NOW** Plaintiff Omid Ahmadi ("Plaintiff"), and for his causes of action against

the above-named Defendants, alleges and states the following:

## PARTIES, JURISDICTION, AND VENUE

1.      Omid Ahmadi is a citizen of the State of Oklahoma and County of Tulsa.

2.      Defendant City of Tulsa, Oklahoma ("City") is a municipality located in Tulsa County,

Oklahoma. The City is responsible for the management of the Tulsa Municipal Jail, including

ensuring that arrestees and detainees are provided constitutionally adequate medical care. The City

was additionally responsible, in part, for creating and implementing policies, practices and

protocols that govern the use of force upon, and the provision of medical and mental health care

to, inmates at the Tulsa County Jail, and for training and supervising its employees.

3.      Defendant G4S Secure Solutions (USA), Inc. ("G4S") is a national corporation

headquartered in Jupiter, Florida. Defendant G4S, by contract with the City, staffs and operates

the Tulsa Municipal Jail. G4S was additionally responsible, in part, for creating and implementing

policies, practices and protocols that govern the use of force upon, and the provision of medical

and mental health care to, inmates at the Tulsa Municipal Jail, and for training and supervising its employees.

4.      G4S was, at all times relevant hereto, endowed by the City with powers or functions governmental in nature, such that G4S became an agency or instrumentality of the State and subject to its constitutional limitations.

5.      Defendant John Doe #1 ("John Doe #1") is a Tulsa Municipal Jail Detention Officer, employed by Defendant G4S. John Doe #1 committed underlying violations of Plaintiff's constitutional rights, explained below in more detail.

6.      Defendants John Doe ##2-10 ("John Doe ##2-10") are Detention Officers and/or staff members at the Tulsa Municipal Jail, and are employed by Defendant G4S. John Doe ##2-10 committed underlying violations of Plaintiff's constitutional rights, explained below in more detail.

7.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Fourteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

8.      The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

9.      This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, since the claims form part of the same case or controversy arising under the United States Constitution and federal law.

10.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATEMENT OF FACTS

11.      Paragraphs 1-10 are incorporated herein by reference.

12.     In early 2018, the City entered into contractual relationship with G4S to staff and operate the Tulsa Municipal Jail, or "lockup" facility. **[*See* Ex. A]**

13.     On or about November 2, 2021, Mr. Omid Ahmadi (hereinafter "Plaintiff") was brought to the Tulsa Municipal Jail as a pre-trial detainee.

14.     Once Mr. Ahmadi was booked into the jail, Plaintiff was subsequently harassed and assaulted by detention officers and staff at the Tulsa Municipal Jail.

15.     Upon Plaintiff's medical intake to the jail, there was no problem with or injury to, Plaintiff's left ribcage or abdomen.

16.     In the time period between November 2, 2021, and November 4, 2021, Plaintiff was subjected to unnecessary and unauthorized physical abuse by the staff in violation of the Jail's **written** policies and procedures.

17.     On November 4, 2021, Plaintiff was involved in an altercation with, and otherwise attacked by, John Doe ##1-10, presently unidentified.

18.     This abuse consisted of, but was not limited to, being tackled without provocation by John Doe #1, and being kicked repeatedly by John Doe ##1-10, as Plaintiff would later relay to offsite medical professionals.

19.     John Doe #1 bragged of his former football prowess and ability to tackle.

20.     John Doe #1's subsequent tackle of Plaintiff was a blatant display of an excessive and degrading use of force on behalf of the jailers.

21.     Plaintiff was injured on his left side of the abdomen under the rib cage and under the ribs.

22.     Plaintiff repeatedly requested medical assistance after the above-described assault.

23.     It was obvious to John Doe ##1-10 that as a result of the above-described attack, Plaintiff had suffered significant physical injuries.

24.     The significant physical injuries that Plaintiff suffered manifested themselves, *inter alia*, in the form of extensive, severe, and ever-increasing external bruising, Plaintiff's near total lack of

mobility, Plaintiff's extreme difficult using / loss of use of his extremities, and Plaintiff crying out in pain.

25.     The significant degree to which Plaintiff had been injured was further made apparent to John Doe ##1-10 by virtue of Plaintiff's inability to eat or even drink water following the attack.

26.     Upon information and belief, City and G4S have a facially deficient policy and practice of relying on non-medical staff to make "medical" decisions.

27.     Despite becoming aware immediately after the attack that Plaintiff had been significantly injured, John Doe ##1-10 neither provided, nor attempted to provide, any medical attention to Plaintiff during the entire remainder of his stay at Tulsa Municipal Jail.

28.     After Plaintiff was released from Tulsa Municipal Jail, the abdominal pain Plaintiff had been suffering as a result of the above-described attack by John Doe ##1-10 continued to worsen.

29.     On November 7, 2021, Plaintiff presented to Saint Francis Hospital and Dr. Kilbury complaining of the injuries he received as a result of being "hit and kicked in the left side" while at the Tulsa Municipal Jail on November 4, 2021.

30.     Plaintiff was diagnosed with a splenic laceration indicated by his external hematoma with active bleeding that required surgical intervention of a splenic artery embolization for a ruptured spleen.

31.     Plaintiff further suffered from several broken ribs.

32.     Plaintiff was kept at Saint Francis hospital for medical treatment until November 10, 2021.

33.     Unfortunately, after discharge, Plaintiff continued to collect fluid in his abdomen, requiring him to return to Saint Francis for further treatment.

34.     On November 12, 2021, Plaintiff had to further undergo surgery to remove the hematoma as soon as possible.

35.     Since that time, Plaintiff has continued to receive medical treatment for the injuries inflicted upon him by John Doe ##1-10 during his stay at Tulsa Municipal Jail.

36. Defendant G4S is responsible for staffing the Tulsa Municipal Jail.

37. Defendant John Doe ##1-10 were employed by G4S to oversee inmates at the Jail.

38. City and G4S had a duty not only to ensure inmates were properly cared for, but to adequately prepare its employees to deal with issues pertaining to inmate safety and health as they arose.

39. Defendant City of Tulsa, as the employer and provider of the Tulsa Police Department, is responsible for managing the Tulsa Municipal Jail. Pursuant to this duty, a TPD Sergeant is a member of the Jail staff.

40. As the managing entity of the Jail, the City has a duty to provide for the health and wellbeing of its inmates.

41. Notably, the City provided no on-site medical staff at the Jail, and, upon information and belief, did not require G4S to employ any medical staff.

42. Moreover, upon information and belief, the City did not provide training or guidance to G4S or the on-site Sergeant regarding inmate medical episodes and/or other health-related concerns that would reasonably arise in the operation of a municipal jail.

## CAUSES OF ACTION

### I. VIOLATION OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES (42 U.S.C. § 1983)
#### A. Jail Staff/Underlying Violations

43. Paragraphs 1-42 are incorporated herein by reference.

44. John Doe ##1-10 knew – and/or it was objectively obvious to them -- there was a strong likelihood that Plaintiff was in danger of serious harm and/or had suffered serious harm.

45. As described *supra*, Plaintiff had serious and emergent medical issues that were obvious to the jail staff, including John Doe ##1-10.

46.     It was obvious to the jail staff, including John Doe ##1-10, that Plaintiff needed immediate and emergent evaluation and treatment from a physician.

47.     Nevertheless, such services were denied, delayed, and obstructed. Indeed, Plaintiff was left to languish at the facility, despite his obvious and serious medical needs.

48.     In addition to denying Plaintiff any medical attention for an extended period of time, Defendants eventually discharged Plaintiff to avoid -- and rather than -- rendering any medical aid whatsoever.

49.     Under the circumstances, jail staff had a duty and obligation to assure that Plaintiff received treatment or access to medical personnel capable of evaluating the need for treatment. They did neither, in deliberate indifference to the Plaintiff's serious medical needs.

50.     Jail staff were also deliberately indifferent under a purely objective standard of liability. That is, Jail staff did not take reasonable available measures to abate the obvious risk of substantial harm to Plaintiff.

51.     As a direct and proximate result of this deliberate indifference, as described above, Plaintiff experienced unnecessary physical pain, a worsening of her condition, severe emotional distress, mental anguish, a loss of quality and enjoyment of life, terror, degradation, and oppression.

52.     As a direct and proximate result of this deliberate indifference, as described above, Plaintiff experienced unnecessary physical pain, a worsening of her condition, severe emotional distress, mental anguish, a loss of quality and enjoyment of life, terror, degradation, and oppression.

53.     As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to pecuniary and compensatory damages. Plaintiff is entitled to damages due to the deprivation of his rights secured by the U.S. Constitution, including punitive damages.

## B.     Municipal Liability (City of Tulsa & G4S)

54.     Paragraphs 1-53 are incorporated herein by reference.

55.     There is an affirmative link between the deprivation of Plaintiff's constitutional rights and the

policies, practices and/or customs which the City and G4S promulgated, created, and implemented and/or for which they possessed responsibility.

56.	On information and belief, City and G4S has utterly failed to train and supervise jail staff with respect to recognizing the signs and symptoms of serious physical injuries and/or medical conditions.

57.	On information and belief, City and G4S has utterly failed to train and supervise the detention officers and staff of the Tulsa Municipal Jail regarding the protection of arrestees.

58.	Additionally, on information and belief, City and G4S has utterly failed to train and supervise the detention officers and staff of the Tulsa Municipal Jail to recognize that physical assault can and does result in internal trauma, and to adequate respond to and/or provide treatment for the same.

59.	City and G4S should have known that the above-described failure to train and supervise was substantially certain to result in Constitutional violations.

60.	City and G4S's failure to train and supervise resulted from a conscious and/or deliberate choice to follow a course of action from among various alternatives available to them, and was a moving force behind the violation of Plaintiff's civil rights and the resulting injuries alleged herein.

61.	City and G4S have a history of indifference to the complaints of pretrial detainees at the Tulsa Municipal Jail leading to serious consequences, including significant injuries and the exacerbation of such injuries.

62.	For example, in the case of *Burke v. City of Tulsa, et al.*, U.S. District Court Case No. 21-CV-131, City and G4S's deliberate indifference and failure to provide medical treatment to individuals being held at the Tulsa Municipal Jail led to the death of Lawanda Ward in January of 2020.

63.	In that case, the briefs by which Plaintiff opposed the motions to dismiss filed by City and G4S stated as follows:

Plaintiff plausibly alleges that the City [and G4S were] responsible for such an unconstitutional medical delivery system at the Tulsa Municipal Jail. To wit, Plaintiff alleges as follows:

■ "[The City] is responsible for the management of the Tulsa Municipal Jail, including ensuring that arrestees and detainees are provided constitutionally adequate medical care. The City was additionally responsible, in part, for creating and implementing policies, practices and protocols that govern the provision of medical and mental health care to inmates at the Tulsa County Jail, and for training and supervising its employees. The City provides and employs the Tulsa Police Department.

■ "G4S, by contract with the City, staffs and operates the Tulsa Municipal Jail. G4S was additionally responsible, in part, for creating and implementing policies, practices and protocols that govern the provision of medical and mental health care to inmates at the Tulsa Municipal Jail, and for training and supervising its employees. G4S was, at all times relevant hereto, endowed by the City with powers or functions governmental in nature, such that G4S became an agency or instrumentality of the State and subject to its constitutional limitations."

■ In early 2018, the City entered into contractual relationship with G4S to staff and operate the Tulsa Municipal Jail.

■ "From the inception of the contractual relationship between the City and G4S, it was expressly agreed, by both parties, that neither G4S nor the City would provide any on-site medical staffing or services at the Jail. In other words, by design, there was no discernable medical delivery system at the Jail."

■ "Rather than provide any resources for a medical delivery system at the Jail, the City and G4S agreed that the detention staff, who have no medical training, 'may use the City of Tulsa Fire Department (TFD) and the Emergency Medical Services Authority (EMSA) for medical services at the lockup facility, as well as medical ***transports for prisoners released on their own recognizance by a municipal judge.'***"

■ "The accepted contractual terms between the City and G4S further provided that if G4S 'desire[d] to supplement TFD and EMSA medical services, the [G4S] should include a detailed report outlining its proposal for supplemental medical services.' However, on information and belief, at no time prior to January 6, 2020, did G4S submit a report outlining its proposal for supplemental medical services."

■ "Rather, pursuant to their contractual arrangement, from early 2018 through at least January 6, 2020, the City and G4S staffed, operated and managed with Jail without any on-site medical personnel or services, attempted to use the fire department and EMSA as a makeshift 'medical' system and relied on the municipal court's "OR" bonds to dictate when detainees with serious medical needs would be transported to the hospital."

■ "This 'medical' delivery 'system', as conceptualized, agreed upon and implemented by the City and G4S was destined to fail, and substantially certain to result in constitutional deprivations."

■ "As a matter of systemic design, policy and practice, detainees at the Jail were denied access to any physician, physiatrist, nurse, or any other medical personnel, capable of assessing their condition or providing treatment."

- "As a matter of systemic design, policy and practice, detainees at the Jail were only provided access to a physician, physiatrist, nurse, or any other medical personnel, capable of assessing their condition or providing treatment, if and when non-medically trained detention staff requested an 'OR' bond and such 'OR' bond was granted by a non-medically trained municipal court judge."

- "As a matter of systemic design, policy and practice, there were such gross deficiencies in medical staffing and procedures at the Jail that detainees were effectively denied treatment."

- "Ms. Ward suffered and died as direct and proximate result of the systemic failure of medical policies and procedures."

- "By contractual arrangement with the City, Defendant G4S is responsible for staffing the Tulsa Municipal Jail. [The individual defendants] were employed by G4S to supervise detainees, like Ms. Ward, at the Jail. The City and G4S consciously decided and agreed to provide no reasonable access to medical personnel to detect, respond, or otherwise monitor the health and wellbeing of those housed at the Jail, with deliberate indifference."

- "Defendant City of Tulsa, as the employer and provider of the Tulsa Police Department, is responsible for managing the Tulsa Municipal Jail. Pursuant to this duty, a TPD Sergeant is a member of the Jail staff. … As the managing entity of the Jail, the City has a duty to provide for the health and wellbeing of its inmates. Notably, the City provided no access to qualified medical professionals at the Jail, and, directed G4S not to employ any medical staff."

**[*See* Case No. 21-CV-131, Dkt. #50, pp. 9-11 (citing the *Amended Complaint* filed in that case as Dkt. #38, ¶¶ 2, 3, 19, 42-52, & 59-78); Dkt. #51, pp. 9-11]**

64.     Further describing City and G4S's long-standing practices and policies of deliberate indifference toward individuals held at the Tulsa Municipal Jail, the plaintiff in *Burke v. City of Tulsa, et al.*, continued:

These are allegations of a "systemic failure of medical policies and procedures". *Crowson*, 983 F.3d at 1192. These are allegations of "such gross deficiencies in staffing … or procedures that [arrestees are] effectively denied access to adequate medical care." *Garcia,* 768 F.2d at 308. These are allegations of insufficient medical staffing, resources, and training and indifference toward medical needs at the Jail. *See Burke,* 935 F.3d at 999-1001. These are allegations of a badly broken and dangerous medical delivery system similar to the Carter County Jail's system found to be unconstitutional by the Court in *Prince,* 28 F.4th at 1049-50. As was the case in *Prince*, at the Jail, detention officers "with no medical training were tasked with identifying medical conditions" during the booking process. Similar to the Carter County Sheriff, the City and G4S failed to provide access to a physician at the Jail. Like the Carter County Jail, there are no medical personnel at the Jail on evenings and weekends. Indeed, there was ***never any medical personnel*** staffed at the Tulsa Municipal Jail. … Lastly, the Carter County Sheriff, the City and G4S alike relied on "untrained jail guards … to apply their own 'common sense' to determine when emergent medical conditions warranted transport to the hospital."

*Prince,* 28 F.4th at 1049-50. Making matters even more dangerous, the City and G4S, as a matter of policy and practice, relied on non-medically trained municipal court judges to determine when, and if, detainees should be released for emergent medical care. In sum, Plaintiff has sufficiently alleged unconstitutional policies or customs which G4S possessed responsibility for.

With respect to causation, the Tenth Circuit has held that "the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Hinkle v. Beckham Cty. Bd. of Cty. Commissioners,* 962 F.3d 1204, 1239 (10th Cir. 2020). Plaintiff has adequately alleged that the above-referenced policies and customs were "closely related to the violation of" Ms. Ward's "federally protected right" to adequate medical care. By way of example, Plaintiff alleges that, consistent with the City and G4S's policies and customs, Ms. Ward was cleared for booking by non-medical detention staff (Defendants Frederick and Okodura) despite information that she had recently swallowed narcotics, could barely walk or stand up, was not feeling well, suffered from high blood pressure and lupus and was in need of prescription medication for her medical conditions. *See* Amended Complaint (Dkt. #38) at ¶¶ 20-23. Plaintiff further alleges that "consistent with the policy and practice at the Jail, [Defendant] Kaler 'called court records … to see if [the court] would add [her] onto the court docket *due to her medical needs*'" but "the judge determined that Ms. Ward 'would have to wait until her court date due to her charges.'" *Id.* at ¶ 25. Plaintiff alleges that "[b]ecause of the City and G4S's facially deficient policy and practice of rel[]ying on non-medical staff and the municipal court to make 'medical' decisions, Lawanda spent approximately 72 more hours detained in the Jail without any medical attention before she succumbed to her ailments." *Id.* at ¶ 26. Additionally, Plaintiff alleges that on January 4, 2020, Ms. Ward requested her prescription medication, including insulin for diabetes, but was told by Defendant Whitworth that unless her family brought the medication to the Jail, she would not receive any dose(s) because there was no mediation or medical staff available at the Jail. *Id.* at ¶ 27. Plaintiff states that detention staff (including Defendants Kessler, Forbes, Napier and Whitworth) disregarded Ms. Ward's complaints that she could not breathe, her erratic behavior and repeated requests to be sent to the hospital. *Id.* at ¶¶ 27. All of these failures are attributable to the City and G4S's policies and practices (as described above) of providing utterly inadequate / non-existent access to medically trained personnel and medication and reliance on non-medical staff and court officials to make "medical" decisions, even for detainees with serious and life-threatening conditions, like Ms. Ward. Plaintiff has plausibly alleged causation.

For its part, G4S argues that Plaintiff has failed to sufficiently allege his municipal liability theory. G4S's arguments lack merit. For example, G4S points to Oklahoma state regulations in asserting that it is not required, by Oklahoma law, to provide access to qualified medical providers. Even assuming this is true, Oklahoma's regulatory standards do not set the parameters of what constitutes a *constitutionally* adequate medical delivery system. G4S cites no authority to the contrary. The remainder of the G4S's argument is based on the materially incomplete copy of the Contract attached as Exhibit 1 to the City's Motion. While, as discussed in the previous section, Plaintiff takes the position the Court should not base its decision on the materially incomplete copy of the Contract, Exhibit 1 to the City's Motion to Dismiss only *supports* Plaintiff's arguments. The "Contract" clearly provides that non-medical staff, employed by G4S, are charged with deciding

whether inmates are ***"medically fit"*** to enter the Jail "without further medical attention". Dkt. #44-1 at § 3.4 (emphasis added). The "Contract" further leaves it to the non-medical personnel to determine whether ***"medical concerns*** exist that would preclude" booking…." *Id.* The "Contract" also shows that there is no access to medical staff on-site and that outside medical personnel are to be contacted only in the event of "a serious injury or unresponsive inmate…." *Id.* By design, the medical delivery "system" created by the "Contract" evinces "gross deficiencies in staffing … or procedures" such that detainees with serious and life-threatening medical conidiations, like Ms. Ward, are "effectively denied access to adequate medical care." *Garcia,* 768 F.2d at 308. The "Contract" provides no basis for dismissal.

In sum, Plaintiff has easily "assert[ed] a plausible § 1983 claim against [the City] based upon its alleged policies, customs, or practices under *Monell* and its progeny." *Revilla v. Glanz,* 8 F. Supp. 3d 1336, 1342 (N.D. Okla. 2014).

**[*See* Case No. 21-CV-131, Dkt. #50, pp. 11-14]**

65.     As a direct result of City and G4S's unlawful conduct, Plaintiff suffered serious actual physical and emotional injuries, and other damages and losses as described herein entitling Plaintiff to compensatory and special damages, in amounts to be determined at trial.

## II.     NEGLIGENCE

66.     Paragraphs 1-65 are incorporated herein by reference.

67.     G4S owes a duty to arrestees/detainees, including Plaintiff, to use reasonable care to assure those arrestees/detainees in need of medical attention, like Plaintiff, are provided with appropriate and timely medical attention.

68.     G4S breached that duty by wholly failing to assure that Plaintiff received prompt and adequate medical treatment of his obvious medical needs.

69.     As a direct and proximate cause of G4S's negligence, Plaintiff experienced physical pain, severe emotional distress, mental anguish, and the damages alleged herein.

70.     At all pertinent times, G4S was acting within the scope of their duty as operators of the Tulsa Municipal Jail.

71.     G4S is vicariously liable for the negligence of its employees and agents, acting within the

scope of their employment.

72.      As a direct and proximate cause of the negligence alleged herein, Plaintiff suffered real and

actual damages, mental and physical pain and suffering, emotional distress, and other damages in

excess of $75,000.00.

WHEREFORE, based on the foregoing, Plaintiff prays this Court grant the relief sought,

including but not limited to actual and compensatory damages in excess of Seventy-Five Thousand

Dollars ($75,000.00), with interest accruing from the date of filing suit, punitive damages, the costs

of bringing this action, and a reasonable attorney fee, along with such other relief as is deemed just

and equitable.

**Respectfully submitted:**

**/s/ D. Mitchell Garrett, Jr.**
**D. Mitchell Garrett, Jr., OBA# 20704**
**GARRETT LAW**
**320 South Boston Avenue, Suite 825-G Tulsa,**
**Oklahoma  74103**
**Telephone: (918) 221-6190**
**Facsimile: (918) 340-6799**
**E-mail: mitchell@garrett.legal**

**Attorney for Plaintiff**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2023, I electronically transmitted the foregoing document
to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic
Filing to the following ECF registrants (names only are sufficient):

Hayes Thomas Martin, Esq.
R. Lawson Vaughn, III,Esq.

**/s/ D. Mitchell Garrett**
**D. Mitchell Garrett**